## CALLAHAN vs. BOAZMAN.

1. If a debtor makes a payment to his creditor holding two several demands against him, and does not at the time of the payment direct how it shall be applied, the creditor has the legal right to appropriate it to either demand; but if he does not make the application until after suit is brought on both demands, neither party would be allowed to direct its application, but the law will appropriate it for them according to its own notions of justice.

2, When the payment is made in cotton, at a price to be ascertained at a future time, with a general direction that it should be applied to "all just demands which the creditor might hold against him," the creditor cannot make the application until the price is ascertained; and if, before that time, he brings suit against the debtor on both demands, the right of appropriation is taken away from both parties by the institution of the suit, and the law must apply the payment.

3. Where the creditor has two demands, the one a specialty debt, and the other an open account, and the debtor makes a general payment, without any direction as to its application, the creditor is not bound to apply it to the older of the two demands.

4. When the debtor makes a general payment, without declaring at the time in what manner and to what demand he wishes it applied, the creditor is not bound to notify him of the manner in which he has appropriated it, before the debtor will be deprived of his right to direct the application. The only obligation which he owes to the debtor is, to make the application in good faith, so as to extinguish *pro tanto* the demand to which it is applied.

ERROR to the Circuit of Lawrence.

Tried before the Hon. JOHN E. MOORE.

Boazman sued Callahan before a justice of the peace, on a promissory note for the payment of $48$\frac{14}{100}$, and obtained judgment against him for $50. Callahan took the case to the County Court by *certiorari*, and on a trial there, a verdict and judgment was rendered against him. On the trial, a bill of exceptions was signed and sealed by the judge of that court, and a writ of error was sued by Callahan to the Circuit Court. In that court there was a regular assignment and joinder in error. It appears by the record, that a trial was had on the errors assigned, and the judgment of the County Court reversed, at the March term, 1851, of said court; but as the common law jurisdiction had, pending the writ of error, been taken from the County Court by act of the legislature, and all the cases in that court had been transferred by law to

the Circuit Court, the latter court did not remand the cause, but remitted it to its place on its own docket, and at the March term, 1852, tried it *de novo*, as though it had been originally taken to that court by *certiorari*.

On this trial, as appears by the bill of exceptions, the plaintiff read to the jury a promissory note made by defendant to him, on the 21st March, 1848, for the payment one day after date of the sum of $48\frac{14}{100}$, and there rested his case. The defendant then introduced and read to the jury the following writing: "Moulton, August 19th, 1848. This is to certify that I have this day sold to Hugh D. Boazman my present growing crop of cotton, or so much thereof as will pay all just claims or demands he may have against me, at the customary price the first day of March, 1849; the cotton to be delivered at some convenient gin in the neighborhood, that may hereafter be agreed upon. Witness my hand and seal." This paper is signed by Callagan. He further proved, that under this agreement he delivered to Boazman several thousand pounds of cotton. The plaintiff then proved, that he had a mercantile account against the defendant, falling due the first day of January, 1849, (but showing no other claim due when the contract for the purchase of the cotton was made, except the note sued on.) It was further shown that, on the 28th February, 1849, the plaintiff warranted the defendant on both the note and account, and the plaintiff had placed the cotton as a credit on the account, but had never given the defendant notice of his intention so to apply it, and that the defenant appeared before the magistrate who tried the causes, and insisted that the cotton should be placed as a credit on the note.

On this proof the defendant requested the court to charge the jury: 1st. That the defendant had the right, on the trial before the justice, to direct the value of the cotton delivered to be applied as a credit on the note; 2d. That, under the agreement by which the defendant sold the cotton to plaintiff, it was the duty of the latter to apply the proceeds to the payment of the note, and that under said agreement, he had no right to apply it to the account; 3d. That, if the jury believed from the evidence that the cotton was paid generally on defendant's indebtedness to plaintiff, and that no particular ap-

plication of it was contemplated by the parties at the time, that then the earliest items of credit must go to extinguish the earliest items of debit, and accordingly the cotton should have been applied to the payment of the note; 4th. That, although the creditor may make the application of a payment made to one of several debts, when the debtor makes payment without directing its application, yet he must notify the debtor of his election of the application before it will be complete and valid.

The court refused to give any one of the charges asked, and the defendant excepted to each refusal, and here assigns for error the refusals to charge as requested.

D. P. LEWIS, for plaintiff in error:

1. The contract shows an application of the cotton to the note. That was the only claim then due. The application need not be expressed; it may be implied from circumstances, from the contract. Pitman on Principal and Surety, 113; 1 En. Com. L. R. 201; 10 ib. 443.

2. If the creditor choose to apply money paid generally, he must communicate the application to the debtor, before it is valid. Pitman on Prin. and Surety, 112; 5 Taunton, 596; 9 En. Com. L. R. 29; 2 Vern. 606.

3. The law will apply a general payment to the oldest debt. 15 En. Com. L. R. 348; 30 ib. 283; 35 ib. 178, and cases cited.

4. The refusal of the third and fourth charges was clear error; because those propositions are the law of the case, from the previous ruling of the Circuit Court in error, as the first bill of exceptions shows.

R. O. PICKETT, contra:

There is no error in the record. It is insisted, that, inasmuch as Callahan failed to appropriate the payment, at or before the time when it was made, his right to control the aplication was gone. The principle is well settled and recognized everywhere, that if one debt be by bond, or covenant under seal, and the other by simple contract, or open account, the creditor may apply the payment to the latter. Or, if one debt be by judgment, and the other by simple contract, the creditor may apply to the latter. In like manner, if there

are several notes, due at different times, the creditor may apply the payment to whichever one he pleases ; or, if the debts are distinct, he may apply as he pleases.   And further, if one debt be barred by the statute of limitations, the creditor may apply a general payment to that debt, and sue upon the debt not barred.   2 Hay. 385 ; 4 Gill. & J. 361 ; 5 Taunton, 596 ; Richardson v. Washington Bank, 3 Metcalf 536 ; 20 Pick. 339 ; 1 ib. 332 ; 1 McCord 368 ; 8 Car. & P. 704 ; 5 Bingham, N. C. 455 ; 5 Mees. & W. 300 ; 2 Adol. & E. 41 ; 2 New Ham. 193 ; Overton, 488 ; 1 Scammon 196 ; 1 J. J. M. 583 ; 2 Vermont 283 ; 14 ib. 83 ; 13 Conn. 453.

LIGON, J.—1.  The first charge asked by the defendant in the court below was correctly refused, since it appears by the proof that he had made the payment with no other direction for its application, either when the contract for the sale of the cotton was made, or when the cotton was delivered, than that it should be applied to "all just demands which Boazman might hold against him ;" and as there were two, and the justice of neither is at all questioned by Callahan, Boazman had the legal right to appropriate the payment to either, if the payment were really made before suit brought.   If the payment had not been applied until suit brought, and no directions had been given by Callahan until after that time, neither party would be allowed to direct its application, but the law will appropriate it, and such an appropriation will be made of it as justice requires.   To this point, the case of the United States v. Kirkpatrick, 9 Wheat. 720, is a direct authority. In that case, Mr. Justice Story, who delivered the opinion of the court, says : " The general doctrine is, that the debtor has a right, if he pleases, to make the appropriation of payments ; if he omit it, the creditor may make it ; if both omit it, the law will apply the payment according to its own notions of justice.   It is certainly too late for either party to claim the right to make an appropriation, after the controversy has arisen, and *a fortiori* at the time of the trial."   See also, Mills v. Fowlkes, 35 Eng. Com. Law Rep. 179, opinion of Bosanquet, J.

2.  There is nothing in the terms of the agreement, to take this case out of the general rule in all cases of payments

17

made by a debtor to a creditor who holds two demands against him, without directions for their application. Callahan agrees to sell his cotton to Boazman, and the proceeds, by the agreement of sale, are to be applied to the payment of all demands justly due from him to Boazman; but by the terms of the agreement, a future day, and that beyond the maturity of the account, is fixed to ascertain the amount of the proceeds of the cotton. The payment, therefore, cannot be considered as made until the cotton was delivered, and the price to be paid for it ascertained; for, until that time, the precise amount which should be passed to the credit of the debtor, was unknown to both parties.

The bill of exceptions does not show, at what precise point of time the credit for the value of the cotton was entered on the account, nor does it show that Callahan ever varied his agreement as to the time when such value was to be fixed. By that agreement, he evidently contracted for the advantage of the market for cotton on the 1st day of March, 1849, and before this time Boazman, for the reasons before stated, could not have made the application.

It is shown by the record, that Boazman sued Callahan both on the note and the account, on the 28th of February, 1849, the day before the credit could have been applied according to the terms of the agreement. Under the cases before cited, the right of appropriation was taken away from both parties, by the institution of the suits, before the sum to be credited could be ascertained; so the law must apply the payment.

The court could apply the credit to either of the demands, as to it might appear just and proper under all the circumstances of the cases, and since the justice of the peace has applied it to the account, and, we presume, has rendered judgment in that suit accordingly, it would be manifestly unjust to apply it again to the note on which this suit is brought, and thus enable the plaintiff in error to take a double benefit from the payment. The application of the payment by the creditor, if afterwards sanctioned by the court, in cases like the present, in which both parties have lost the right to appropriate it, in consequence of suit being brought before either had exercised it, must be regarded as the act of the court under the authority conferred on it by law.

As these views of the agreement, and of the rights of the parties, are inconsistent with the second charge asked, we are of opinion that the court did not err in refusing it.

3. We have been unable to find any case in which it has been held, that, where a creditor has two demands, the one a specialty debt, and the other an open account, and the debtor pays generally, without directions as to the application of payment, that the creditor is bound to apply the payment to the older of the two demands. Such a rule has been frequently applied by the courts, in cases in which an action is brought on an account consisting of several items falling due at different times, and, for the benefit of sureties, when the creditor has two demands, the one older than the other, and the sureties on the two are not the same. 1 Har. & J. 754; 4 ib. 98; 9 Wheat. 720; 10 Conn. 174; 5 Bingham 455.

But this case bears no analogy to either of those cited, or any of that class, and consequently is not subject to the rules which govern them. As the object of the third charge asked was, to subject it to those rules, there was no error in refusing it.

4. Neither in cases like the present, nor indeed in any case of direct payment made by a debtor to his creditor, without declaring at the time in what manner, and to what demand he desires to apply it, is the creditor bound to notify the debtor of the manner in which he has appropriated it, before the debtor will be deprived of his right to control its application.

The election being vested in the creditor, by the failure of the debtor to exercise it at the time of the payment, the former may exercise it at his own pleasure, and apply the payment to either demand. The only obligation he owes to the debtor in this respect is, to make the application in good faith, so as to extinguish the demand, *pro tanto*, to which it is applied.

There is no error in the record, and the judgment is affirmed.